All right, we will hear argument next in case number 23-2511, John Taylor v. Superintendent. Mr. Orlick. May it please the Court, Frederick Warwick on behalf of the appellant, John Junior Taylor, I'd like to reserve two minutes of my time for rebuttal. Granted. Counsel's duty of loyalty to his or her client is both the oldest recognized duty of lawyers and the most basic. As early as 1850, the Supreme Court recognized it in Stockton v. Ford. And well before that, Lord Brougham, in his defense of Queen Caroline, acknowledged it as an advocate in pursuit of his duty, knows but one person in the world, and that person is his client. It's part of the very fabric of the Sixth Amendment and absolutely critical to a properly functioned adversarial justice system based on due process. It was violated here when counsel divided his loyalty between Mr. Taylor, who was facing a first-degree murder prosecution, and his other client, facing federal charges for fraud and firearms, who was a jailhouse informant testifying against Mr. Taylor. In our view, the Superior Court, and by extension the District Court, made three legal errors in concluding that no conflict of interest existed here. First, the Superior Court found that no conflict existed because it had been resolved. By the time of the trial, seven days before, counsel had withdrawn from the informant's case. In the Superior Court's view, that extinguished the conflict of interest. In other words, counsel owed no further duty to his client. This is wrong on several levels. As the post-conviction court found... Before you get there, I want to make sure I'm properly in the right frame. So as I understand 28 U.S.C. 2254 D.1, we can grant a writ if the state court's decision was contrary to or involved in unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Correct. And then there's the United States case Parker v. Matthews, 2012 case, where the Supreme Court explicitly says that circuit precedent does not constitute clearly established federal law. You have to look to the holdings of the Supreme Court. Correct. And then we have a lot of discussion about our cases. Simon, which actually is not a 2254 case at all. It arises under Virginia's, not Virginia, I'm sorry, the Virgin Islands habeas statute. And you point us to a Fifth Circuit case. But I'm trying to make sure I understand when we're writing opinion, we step back and say, all right, this is what you're saying is the clearly established law. What is that? Is that Collier v. Sullivan? Is that where we begin and end the analysis? Cuyler v. Sullivan and then this court's opinion on remand, Sullivan v. Cuyler. I think that establishes the basic framework for looking at these issues. I don't think there's a lot of variation in terms of whether you're looking at this issue from the standpoint of 2255 or are you looking at it from the standpoint of 2254, at least in connection with what the. Well, 2255 doesn't have D1, right, that limit that says, I'm sorry, that clearly established federal law as determined by the Supreme Court of the United States. Correct. What I was trying to say inartfully was that I think the framework remains the same. We're still looking at Cuyler v. Sullivan, and that's all we're asking the court to do here. Those cases really provide examples of what we believe are similar situations in which the conflict was manifest. So your argument is Strickland shouldn't apply, Cuyler should apply. Just what is your comment on Mickens? Because it seems Mickens gives some clear guidance about the court's current thinking regarding the scope of Cuyler. Yes. At the end of Mickens, Justice Scalia says in dicta, because the question in that case was simply whether the absence of an inquiry required automatic reversal. But in dicta he says that the courts had extended Cuyler. I'm sorry. Not dicta, it's singular. As a Latin scholar, it bothers me when people pluralize dictum. I'll accept the correction in dictum. One of my pet grieves. Thank you. Thank you, Judge Roth. I'll accept the correction. In dictum, Justice Scalia says, we've extended Cuyler beyond what it was initially intended to. And the first example that he uses is situations like this where you're forced to confront or examine a former client. Then he goes on to discuss book deals and romantic relationships and whether you worked in a prosecutor's office. We're not asking that it be extended there. I mean, I think everybody can agree that if you had represented two individuals and they were on opposite sides of the dispute, an ethical lawyer withdraws from both. An unethical lawyer at least withdraws from the one that's going to trial. And that's not what happened here. Instead, we have a superior court saying that the conflict simply disappeared. Well, so then let's talk about the Cuyler application. Assuming Cuyler applies, you still have to show that there was some actual effect on the trial, right? So what is the – that was actually affected here by – and then let's assume further that there is some sort of actual conflict. So on the basis that there is an actual conflict, then the adverse effect or adverse influence, I don't think we need to look very far. We open up the very first page of the cross-examination. Well, we could actually look at the opening statement where counsel says, I'm under unethical restraint. And I don't know of too many lawyers that start out their cross-examination by advising the jury, hey, I'm under unethical restraint with respect to cross-examining this person. And then go on to say – and that means, like, I can't ask him anything that he might know about the case or I might know about the case from my representation. That's rule 1.6 of the ethical rules. And then he proceeds to say, and if I do, I jeopardize my law license, and I value my law license too much to do that. And then about halfway through the cross-examination, he does exactly what rules 1.6 and 1.9 forbid. He starts to confront his client over statements made between the two of them during an attorney-client meeting at Balfour County Prison three weeks before the start of the murder trial. And he attempts to impeach the informant with statements that the informant made about that meeting to the prosecutor. Let me pick up on what you just talked about, the time before the trial. Are we really limited to just was there a conflict at trial? What about the time before the trial when counsel is actually representing the two of them? And in particular, you know, you have the counsel, as I understand it, actively representing the informant while the plea deal is being initiated, the same plea deal that got the informant a lighter sentence and in which he testified against Taylor. I don't understand why there isn't discussion about the potential conflicts before you get to trial. I mean, just one example, you have the informant in one of the exhibits that you gave us talking about signing a waiver for counsel in the same letter where he's talking about getting information from Mr. Taylor about his strategic defense with counsel, and I'm struggling to understand why isn't that an example of how the representation was adversely affected? Especially when you loop in the fact that you have at least some evidence, some statements regarding whether or not the informant is the paralegal of the counsel. Why aren't we talking about the time even before trial? Well, those are all very good points, and I would make them myself. They're made very adequately by the Fifth Circuit and Shepard. You know, the critical stages of a prosecution in the Sixth Amendment extend well before trial, and, you know, counsel's duty of loyalty was compromised at every level. I got off track when I started answering questions earlier, but I would say that that's one of the mistakes that the Superior Court made, is focusing just on the date that the withdrawal motion was granted. That if you look at the post-conviction court's finding, the post-conviction court says that there was an actual conflict of interest during critical stages of the prosecution of Mr. Taylor. But that was all during the trial, right? The Certificate of Appealability was talking about the cross of the parts you're raising. Was any of the pretrial issues raised at any point? Well, it's not as if they're a separate issue. I mean, the problem here is that the focus by the Superior Court and the post-conviction court on was whether the adequacy of the cross-examination somehow reflected that there was no... I'm not sure that we can redo how the case was presented before the Superior Court, before the District Court and everything. So going back to your cross point, I take your point that there was a cross that seemed to include the contours of the prior representation and the duties to that prior comment. But beyond speculation, how do we know how this actually affected anything? I mean, you're pointing to comments that were made by counsel. Well, how do we know that that had an effect of any actual effect on the jury? We don't look to whether it had an effect on a jury. That's straying into strickland prejudice. And as the Supreme Court has pointed out repeatedly, we don't engage in calculations of the degree of adverse effect. And it's for good reason. We all know this because when you're representing people, there's... So what do we do then? What's the actual effect measurement test? I don't think we have to look very far here. It's not that difficult. Once the attorney has placed himself in a position of a witness during an attorney-client meeting with the informant and is asking questions that basically bolster the informant's credibility by providing statements to the effect that, oh, you said you were afraid of my testimony because of how detailed it was. That attorney has now become a witness. And not just any witness, a witness for the prosecution. He's bolstered the very testimony that he's trying to challenge. And it abruptly ends. And I don't think you need to look further than that to show adverse effect. In fact, if you look at the adverse effect... Judge Walker is trying to speak. Yeah, I'm sorry. I had a break. It's frozen again. It looks like the feed's frozen. Oh, okay. Hi, Judge. I'm on the call. I'll make sure to resolve this quickly. Thank you. You were asking... Okay, the actual test. Yeah, we think you're back now. We lost you for a second, Judge Roth. Yeah, I'm back. Broke. Well, just to get back to my earlier point, there are post-conviction court findings. This wasn't just... Excuse me, what is the actual test? The actual test is the one that was proposed in Kyler or used in Kyler v. Sullivan. You have to show an actual conflict of interest. In other words, counsel's loyalties were divided or counsel blended divergent interests or the interests of the individual client diverged or departed over a material issue of fact or law. We believe that was established here. Counsel's loyalties were divided because he was representing two people on opposite sides of the same case. This court has said... But, again, not during the time of the trial, right? I think we have to be precise. At the trial, he's not representing both of the individuals, right? Well, just to push back on that a little bit, that's a technical line-drawing point, and I agree with Your Honor on that. Well, we do around here, so... Well, I understand that, but rules 1.6 and 1.9, they bind you just the same if you're doing it... If we were going to draw lines like that, then why not draw one an hour before the start of trial? But the duty certainly remains, but the contours of how that duty is exercised and honored is what we're trying to figure out. And so I think it does matter to say, well, at the point that we're at trial now, what is the divergent interest? And if it's not just a divergent interest, then what is it that we see as evidence of divided loyalty? You pointed so far to the cross-examination. How does that show a divergent interest or a divided loyalty beyond the mere existence of the fact that there was a prior representation? Well, the first part of the cross-examination, the informant accuses him of trying to dissuade him from testifying, to get him out of testimony. That's witness tampering. In federal court, he'd be charged with a 1512B offense almost immediately for doing something like that. So that's one. Two would be the fact that he put himself in a position of a witness. That's inherently in conflict with his role as an advocate. This court has said as much in Government of Virgin Islands v. Zepp. And we point out that previously this court has said that when an attorney, both in United States v. Moscone and then later in Simon and the Fifth Circuit in Perillo v. Johnson, puts himself in a position or herself in a position to have to cross-examine a former client, that is a classic example of an inherent conflict of interest. And it's manifest here just by looking at the bizarre nature of the cross-examination. Second, I see my time has skipped it. But the final point I'd like to make is that the focus by the state courts on the adequacy of this cross-examination is somehow extinguishing any adverse effect. We think it's legally misplaced for a variety of reasons, some of which I've already touched upon. But the fact that you might be affected in one place doesn't mean you're not laboring under a conflict of interest in another. And it certainly doesn't mean that you weren't adversely affected or influenced. This court has pointed out, again, that the role of a witness, which counsel placed himself in, and that of an advocate are inconsistent. And as the Tenth Circuit pointed out in Church v. Sullivan, the zealousness or vigorousness of a cross-examination does nothing to extinguish a constitutional error, particularly like the one we have here. Thank you. I'll address any additional questions on rebuttal if you have them. Thank you, counsel. We'll hear from you then. Mr. Lysak. Thank you, Your Honors. Good morning. May it please the Court. My name is Ryan Lysak from the Dauphin County District Attorney's Office here on behalf of Apelli, the respondent in the lower court in this matter. I guess the whole argument that we have is that there has not been anything put forward that an alternative path should have been taken or some information could have been used to ring a bell, which may have resulted. Basically, nothing has been presented to date in any of these proceedings. But I understand your friend on the other side to say, well, that's not the point. The point here is we're not supposed to be doing strickling prejudice. We don't need to unpack all of that. It's enough to show that there was this divided loyalty or divergent interest. So could you comment on that? Yes, Your Honor. In the Coiler Standard, there is still a test that comes about. I understand that prejudice, when we call it prejudice, is distinct from the analysis that we're doing under Coiler. But there are still factors that must be met, other than this concurrent at-one-point representation. There must be some plausible defense strategy or tactic that may have been pursued. And to the point in these pleadings that hasn't really been brought forth, oh, you did A. Because of your divided loyalty, you should have done B. So let me just take a step back. The quote that you just gave, that was from Gambino, right? That was from the Coiler Standard. That's from the standard? As I understand it, Your Honor, I'd be happy to submit a supplemental memorandum. Can you read that quote again? Some lapse or, I'm sorry, some plausible defense strategy or tactic that might have been pursued. Sufficient substance to be a viable alternative. Okay, you can continue. Thank you, Your Honor. Yes, and so we do not have that viable alternative. We understand that there are things that do not look good in a trial. As Learned Opposing Counsel stated, it's usually not a good thing for an attorney to be a witness in the matter that he is prosecuting. However, from my understanding of the law generally, there has to be more to that. There has to be some, you know, causing the defense to lose credibility in the eyes of the jury. One may cross-examine or impeach with anything, regardless of the admissibility of that topic. And that's what we have here. And there are circumstances where an attorney could interview a witness prior to trial, forget to have a third-party witness with that attorney. And so there's then stock on cross-examination. Well, then you tell me that this. And so these situations are not ideal. You know, errors do happen. But we don't have any error in this matter that has risen to the level of even alternative that should have been pursued in this matter. And for that reason, Your Honor, it kind of overlaps a little bit with prejudice. And as much as there's. I apologize for the interruption. This is Greg over Zoom. We lost Judge Rothman materially. So it looks like she's reconnecting now. Can you repeat the last 30 seconds or so? I will try, Your Honor. I apologize. Yes. Just while there are two different standards, we're not in the standard saying prejudice. That's a Strickland phenomenon. However, there is still this test. There has to be some plausible alternative. We did a trial. There has to be some B that would have been plausible, which was not pursued. And I don't think we have this. And while it may not be, you know, a great thing under the ethical standards, I don't think that any of this supposed confidential information inured to the appellant's detriment in this matter. It sounds like he was in a better position to impeach this witness based on, you know, not that he can use that information. But, again, it goes back to there is no alternative that has been put forth at any point in this matter. Judge Roth, anything further? We may have lost her again. One moment, counsel. I'm sorry? Just one moment, counsel. Oh, I'm sorry, yes. Can you hear me? We can hear you now. Okay, my connection is unstable. I hope my personality is more stable. That's my problem, not yours. We're both frozen. Judge Roth, did you have further questions for counsel? I have no further questions. All right. Thank you, counsel. Thank you, your honors. Mr. O'Rourke, maybe you could begin with commenting on counsel's recitation of what I think is United States v. Morelli where we talk about the standards, quoting Gambino, talking about what it is that you need to do and the argument that Mr. Taylor simply hasn't offered that argument. Well, all those cases have to be read against their facts. I mean, a lot of times, most of the time, you're dealing with joint representation of criminal defendants. So, obviously, the inquiry would be is there some sort of different defense strategy that might benefit one defendant over another. Obviously, it doesn't happen very often that an attorney puts himself in a position of cross-examining a former client as of seven days ago. That just simply doesn't happen. So I don't believe the test is so confined that it prevents you finding an adverse effect simply because in this situation it's completely different. Are you arguing for or fighting in the case as a sort of per se rule, like a presumption of prejudice? How does that work with Kyler's sort of limited, narrow framework? No, I don't think we're arguing for a presumption. I would offer an example to, obviously, it's a non-precedential opinion. It's Harmer, which was decided in 2021. That attorney briefly represented an individual charged in a multi-defendant, I believe it might have been a murder, and had no contact with a client, had no meeting with him, did not appear in court. Ultimately, was replaced by private counsel. The case proceeded to trial. He had been appointed by that time by the court to represent another defendant, and was forced to cross-examine that individual. He didn't have any confidential information. He didn't have any difficulties making inquiries into motivation of the cooperating witness. That's different here. And so that situation can play out differently depending on the facts of the case. But it doesn't mean that we're confined to having to show that the defense might have been different. There was only one defendant here, not two. Secondly, the fact that attorneys meet with clients on a regular basis and interview them is not the same as going out to a Dauphin County prison three weeks before the start of a trial and meeting with your current client in an attempt to get them to not testify. That's just not the same. That doesn't happen. And when it does happen, federal authorities charge you with a 1512B offense. So I don't believe that counsel is in a better position by virtue of committing ethical violations to conduct a cross-examination in this particular case. For these reasons, we'd ask the court to reverse the order of the district court and remand for directions to hold a new trial. Thank you. Thank you, counsel. The case is submitted.